IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| MATTHEW ACHEY, and JESSICA ACHEY, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | Case No. 6:22-cv-03261-MDH |
| ) | |
| LIBERTY MUTUAL INSURANCE CO., ) | |
| *et al.*, ) | |
| ) | |
| Defendants. ) | |

## ORDER

Before the Court is Defendants Liberty Mutual Insurance Company and Ohio Security Insurance Company's (collectively "Defendants'") Motion for Summary Judgment. Also before the Court are Plaintiffs' Motion for Summary Judgment and Defendants' Motion to Strike Plaintiffs' Motion for Summary Judgment. For reasons herein, Defendants' Motion for Summary Judgment is **GRANTED**. Plaintiffs' Motion for Summary Judgment and Defendants' Motion to Strike are **DENIED**.

## BACKGROUND

This matter broadly concerns insurance coverage for a hoop barn that sustained damage during a December 2021 windstorm at Plaintiffs' farm in Vernon County, Missouri. At the time of the storm, Plaintiffs' farm had three hoop barns altogether. Only two sustained damage, one measuring 44' x 160' and the other measuring 44' x 208'. Though the parties dispute whether Ohio Casualty or Liberty Mutual issued the check, they agree that one defendant paid for damages sustained only by the hoop barn measuring 44' x 160'. No money was paid for damage sustained

1

by the larger structure. Defendants argue that the relevant insurance policy excluded the larger hoop barn, whereas Plaintiffs disagree.

Record evidence in this case shows significant communication among Plaintiffs, Defendants, and Specialty Risk Insurance, an insurance firm Plaintiffs refer to as their "broker." (Doc. 54-1 at ¶ 3). Plaintiffs pursue no claim in this matter against Specialty Risk Insurance. The applicable insurance policy is identified by number FMS (22) 61 58 14 84 and covered the period between July 25, 2021 and July 25, 2022. On February 25, 2021, Samantha Athey, a Specialty Risk Insurance employee, emailed an address associated with Liberty Mutual. (Doc. 54-1 at 7). Ms. Athey's email requested a quote for adding insurance coverage for three buildings "currently under construction," ostensibly the three hoop barns. (Doc. 54-1 at 7). The record lacks any evidence that Ms. Athey's request for a quote led to a request for coverage on any of the three hoop barns, let alone any actual coverage.

On July 9, 2021, Andrea Heffren, another Specialty Risk Insurance employee, emailed the same Liberty Mutual address seeking a quote for removing all buildings and dwellings associated with a particular portion of Plaintiffs' farm, including the area where the hoop barns were located. (Doc. 48-6). Plaintiffs contend that they lack any knowledge or understanding as to why Ms. Heffren would have inquired about removing coverage for some structures. (Doc. 54 at ¶ 14). Plaintiffs' Petition does not allege that Ms. Heffren sought to remove insurance coverage specifically against Plaintiffs' wishes or otherwise out of bad intent. Rather, Plaintiffs ostensibly suggest that Ms. Heffren simply sought this information with no prompting whatsoever from Plaintiffs themselves. (Doc. 54 at ¶ 14). Though the record lacks direct evidence showing Ms. Heffren requested an actual change to the coverage rather than only a quote for such a change, the

2

original, unamended policy beginning July 25, 2021, lacked coverage for any barn in the part of Plaintiffs' farm where the hoop barns were located. (Doc. 48-1 at 94-288).

Finally, on August 13, 2021, Ms. Heffren again emailed the same Liberty Mutual address specifically requesting coverage beginning July 27, 2021 for a new barn built in 2021 measuring 44' x 160'. (Doc. 48-3). Ms. Heffren's email indicates that Plaintiffs use the barn for hay and machinery and that they seek $150,000 worth of coverage with a $1,000 deductible. Ms. Heffren's email makes no reference to the other two hoop barns located on Plaintiffs' farm. After Ms. Heffren's email, Plaintiffs' insurance coverage was expanded to include a "hay/machinery barn" with coverage up to $150,000 and a $1,000 deductible. (Doc. 48-1 at 75-93, 85). As Ms. Heffren requested in her August 13th email, coverage on the hoop barn began July 27, 2021. (Doc. 48-1 at 76).[1] On January 12, 2022, after the wind damage, this coverage increased to $350,000. (Doc. 48-1 at 37).

Plaintiffs' farm sustained damage from a storm in December 2021. Two of three hoop barns sustained damage: one measuring 44' x 160' and the other measuring 44' x 208'. Defendants paid Plaintiffs for damage associated with the smaller hoop barn, but have paid nothing for damage on the larger. Plaintiffs filed suit in the Circuit Court of Greene County, Missouri, alleging breach of contract and vexatious refusal to pay, both under Missouri law, and seeking money damages and attorney's fees. Defendants thereafter removed the case to this Court.

---

[1] Plaintiffs contest that it remains impossible to tell from record evidence whether the coverage added for the 44' x 160' hoop barn is the result of Ms. Heffren's August 13th email or Ms. Athey's February 25th email seeking a quote for adding three hoop barns. It is plain, however, that the addition of the hoop barn coverage beginning July 27, 2021 resulted from Ms. Heffren's August 13th email because the 2021-2022 policy lacked coverage for any barns, prior to the July 27, 2021 amendment to include the 44' x 160' hoop barn. Further, Ms. Heffren's August 13th email specifically asked for the addition of coverage, whereas Ms. Athey's email simply sought a quote for a change.

3

**STANDARD OF REVIEW**

Summary judgment is proper where, viewing the evidence in the light most favorable to the non-moving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Reich v. ConAgra, Inc.*, 987 F.2d 1357, 1359 (8th Cir. 1993). "Where there is no dispute of material fact and reasonable fact finders could not find in favor of the nonmoving party, summary judgment is appropriate." *Quinn v. St. Louis County*, 653 F.3d 745, 750 (8th Cir. 2011). Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant meets the initial step, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To satisfy this burden, the nonmoving party must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

**DISCUSSION**

I. **The 2021-2022 Insurance Policy is Unambiguous and Did Not Cover the 44' x 208' Hoop Barn**

Defendants' Motion for Summary Judgment argues that judgment as a matter of law in favor of Defendants is necessary because the hoop barn for which Plaintiffs seek recovery was outside the coverage of the applicable insurance policy. Defendants argue that the policy plainly offered coverage for the 44' x 160' hoop barn alone. Plaintiffs, on the other hand, offer no argument in their opposition to Defendants' Motion for Summary Judgment. Instead, Plaintiffs rely only on their responses to Defendants' Statement of Uncontroverted Material Facts as well as Plaintiffs' own Statement of Additional Material Facts. Generally, this Court understands

Plaintiffs' position to be that the applicable policy included coverage for the 44' x 160' hoop barn, as well as the barn measuring 44' x 208'.

To the extent Plaintiffs contend that the applicable policy is ambiguous, this position is unsupported by the policy language.[2] Under Missouri law, an ambiguous insurance policy will be construed in favor of the insured, while an unambiguous policy is enforced according to the written terms. *Seeck v. Geico Gen. Ins. Co.,* 212 S.W.3d 129, 132 (Mo.Banc 2007). In interpreting insurance policy language, courts rely on the meaning "which would be attached by an ordinary person of average understanding." *Id.* Courts "do not evaluate the policy provisions in isolation but rather in terms of the whole policy." *Stewart v. Liberty Mut. Fire Ins. Co.*, 349 S.W.3d 381, 386 (Mo. Ct. App. 2011) (internal citations omitted). A policy that proves simply confusing is not necessarily ambiguous. Rather, "an ambiguity arises in an insurance policy when, due to duplicity, indistinctness, or uncertainty in the meaning of the words used, the policy is reasonably open to different constructions. *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Maune*, 277 S.W.3d 754, 758 (Mo. Ct. App. 2009) (internal citations omitted).

The 2021-2022 policy is plain in that it was initially issued with coverage for no barns. (Doc. 48-1 at 94-288). This was amended shortly thereafter, following Ms. Heffren's August 13th email, to include coverage for one barn beginning July 27, 2021. (Doc. 48-1 at 75-93, 76). The insured structure is referred to in the policy language as a "hay/machinery barn" with coverage up to $150,000 and a $1,000 deductible. (Doc. 48-1 at 75-93, 85). This description takes its language directly from Ms. Heffren's August 13th email to Liberty Mutual, in which she asks for the existing policy to be amended, specifically to include coverage for the 44' x 160' hoop barn. Later,

---

[2] Without argumentation in opposition from Plaintiffs, this Court's ability to understand Plaintiffs' position is limited. To the extent, however, Plaintiffs do not suggest ambiguousness in the policy and instead argue that certain policy language specifically includes coverage for both hoop barns, this Court disagrees for the reasons described herein.

5

following the December 2021 storm, coverage for this same barn was increased to $350,000. (Doc. 48-1 at 36-48, 37). The insured barn is consistently described throughout the policy as building "ST0001" in location "0002". Nowhere does the 2021-2022 policy reference a second barn with alternative location or building numbers. Put differently, no one could reasonably conclude from the policy language alone that the policy contemplated insurance coverage for more than a single barn on Plaintiffs' farm. Considering the policy as a whole, as this Court must, any perceived indistinctness in the policy language does not reasonably lead to the conclusion that both the 44' x 160' as well as the 44' x 208' hoop barns are covered structures. The language of the 2021-2022 policy is unambiguous in that it covers only one barn on Plaintiffs' farm. Because it is undisputed that the policy covered the 44' x 160' hoop barn, the policy must also exclude coverage for the 44' x 208' hoop barn structure. Plaintiffs, therefore, lacked a binding insurance contract with Defendants for the 44' x 208' hoop barn at the time of the 2021 storm. Plaintiffs' breach of contract and vexatious refusal to pay claims therefore fail as a matter of law, as both claims require a contract. *See Newell Rubbermaid, Inc. v. Efficient Sols., Inc.*, 252 S.W.3d 164, 176 (Mo. Ct. App. 2007) (contract breach requires showing "(1) a contract existed between plaintiff and defendant; (2) plaintiff had certain rights and defendant had certain obligations or duties under the contract; (3) defendant breached the contract; and (d) plaintiff suffered damages therefrom."); *Murray-Kaplan v. NEC Ins., Inc.*, 617 S.W.3d 485, 498 (Mo. Ct. App. 2021) (vexatious refusal to pay requires insured to show: "(1) it had an insurance policy with the insurer; (2) the insurer refused to pay; and (3) the insurer's refusal was without reasonable cause or excuse.").[3]

---

[3] Because Plaintiffs lacked insurance coverage for the 44' x 208' hoop barn at the time of the 2021 windstorm, this Court declines to consider Defendants' argument that Defendant Ohio Security, rather than Defendant Liberty Mutual, is Plaintiffs' insurer pursuant to the policy in question.

## II. Whether Specialty Risk Insurance Acted as Defendant Liberty Mutual's Agent

Typically, insurance brokers, like Specialty Risk, are agents of insureds rather than insurers, unless other case-specific facts show otherwise. *Emerson Elec. Co. v. Marsh & McLennan Companies*, 362 S.W.3d 7, 12-14 (Mo. 2012). Plaintiffs have suggested in their briefing that Defendants are liable for the actions of Specialty Risk because Specialty Risk somehow acted as Defendants' agent. Plaintiffs' theory on this issue is not entirely clear. Plaintiffs have brought charges of breach of contract and vexatious refusal to pay against Defendants. Plaintiffs have not specifically brought a charge of, for example, failure to procure. *See, e.g., Busey Truck Equip., Inc. v. Am. Fam. Mut. Ins. Co.*, 299 S.W.3d 735, 738 (Mo. Ct. App. 2009) (negligent failure to procure requires "(1) the agent agreed to procure, for compensation, insurance from the insurance company, (2) the agent failed to procure the agreed upon insurance and, in so doing, failed to exercise reasonable care and diligence, and (3) as a result, the plaintiff suffered damages."). In any event, Plaintiffs' summary judgment and supplemental briefing makes clear Specialty Risk never represented to Plaintiffs that both damaged barns were covered at the time of loss, or any time beforehand.[4] Further, the record lacks any evidence showing Plaintiffs ever specifically requested coverage for both damaged barns. Even Plaintiff Matthew Achey's affidavits stop short of specifically claiming that he in fact requested coverage for the damaged barns. Rather, it appears Plaintiffs' position is simply that they *somehow believed* that the barns were covered under applicable policies. Plaintiffs and the record generally fail to explain the basis of this belief.

---

[4] Plaintiffs do contend an adjustor who assessed damaged structures sent an email indicating "no coverage issues with this loss." Assuming this is true, the adjustor's statement cannot reasonably be read to constitute a contract that would independently require Defendants to pay for both structures. Instead, the only contract at issue in this matter, and this point appears to be uncontested, is policy number FMS (22) 61 58 14 84, for the period between July 25, 2021 and July 25, 2022. For reasons described above, this policy is unambiguous and excluded the hoop barn measuring 44' x 208'. The adjustor's vague statement does not create an additional obligation for either party.

7

Plaintiffs' misunderstanding, however, is perhaps unsurprising given Plaintiffs' admission that they neither received nor reviewed a copy of the applicable policy prior to the beginning of this litigation. Neither Specialty Risk nor Defendants ever failed to procure specific coverage Plaintiffs sought and never represented to Plaintiffs that both damaged barns were covered by an active policy. Plaintiffs' argument as to agency liability is therefore moot. Because Plaintiffs have failed to assert or otherwise argue a specific wrongful action or failure on the part of Specialty Risk, the specific language within the Liberty Mutual Commercial Insurance Producer Agreement and corresponding Binding Authority Guidelines proves inconsequential.

### III. Defendants' Motion to Strike and Plaintiffs' Motion for Summary Judgment

This Court's amended scheduling order indicated dispositive motions were due August 31, 2023. (Doc. 35). Plaintiffs moved for additional time in which to respond to Defendants' Motion for Summary Judgment, which the Court granted. (Docs. 50, 51). Defendants responded to Plaintiffs' Motion for Summary Judgment October 5, 2023 and contemporaneously filed their own Motion for Summary Judgment. Plaintiffs never moved this Court for leave to file a dispositive motion out of time. Rather than timely responding to Plaintiffs' Motion for Summary Judgment, Defendants filed their Motion to Strike Plaintiffs' Motion for Summary Judgment based on Plaintiffs' untimeliness.[5] In response, Plaintiffs point to Defendants' delay in producing the abovementioned Liberty Mutual Commercial Insurance Producer Agreement document. Though this Court agrees that Plaintiffs' Motion for Summary Judgment is untimely, Defendants' Motion

---

[5] Defendants eventually responded to Plaintiffs' untimely Motion for Summary Judgment following a court order. All relevant briefing was considered for this present order.

to Strike is **DENIED**. Plaintiffs' Motion for Summary is considered but **DENIED** for foregoing reasons.

## CONCLUSION

Defendants' Motion for Summary Judgment is **GRANTED**. Plaintiffs' Motion for Summary Judgment and Defendants' Motion to Strike are **DENIED.** Summary judgment is entered in favor of Defendants. This does not bar possible future suits from Plaintiffs against Defendants and/or Specialty Risk under alternative theories of recovery that may prove consistent with this opinion.

**IT IS SO ORDERED**.

DATED: March 5, 2024                  */s/ Douglas Harpool*
                                      **DOUGLAS HARPOOL**
                                      **UNITED STATES DISTRICT JUDGE**